FILED
00 SEP 27 PM 3: 11
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 27 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARRELL L. CARTWRIGHT and, SUSAN O. CARTWRIGHT, etc., | ) ) ) |
| Plaintiffs, | ) Civil Action No. ) |
| v. | ) 99-AR-1227-S ) |
| CAPSTEAD MORTGAGE CORPORATION, | ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION

Before the court is defendant's motion for summary judgment. Plaintiffs, Darrell L. Cartwright and Susan O. Cartwright ("the Cartwrights"), allege that defendant, Capstead Mortgage Corporation ("Capstead"), breached a contract, committed fraud, and was negligent and/or wanton in connection with the assessment of late fees on their mortgage payments. The Cartwrights also seek injunctive relief and to represent a class. For the reasons set forth in the opinion below, defendant's motion is due to be granted.

### Pertinent and Undisputed Facts

The Cartwrights own a home upon which they placed a mortgage to secure a promissory note obligating them to make monthly payments to the lender of $698.08, including principal and interest. Payments are due on the first of each month. The note

contains a late fee provision which specifies, in relevant part:

> If the note holder has not *received* the full amount of any monthly payment by the end of . . . 15 calendar days after it is due, I will pay a late charge to the note holder: the amount of the charge with be 5% of my overdue payment of principal and interest. I will pay this charge promptly but only once on each late payment.

(emphasis added)

In other words, the note contemplates that a payment "received" on the 16th of a month or earlier will not trigger a late fee, but if "received" on the 17th or later a late fee will be charged. Mr. Cartwright is a lawyer.

Capstead, headquartered in Dallas, Texas, formerly engaged in the business of servicing residential mortgage loans. It began servicing the Cartwrights' mortgage loan in March 1995. At the end of 1998, Capstead discontinued this business activity and sold, among other things, its servicing portfolio.

Capstead charged the Cartwrights five late fees of $34.45 each in connection with a mortgage payment, namely the payments made in November 1997, March 1998, May 1998, August 1998, and November 1998. The Cartwrights' complaint centers on these late fees.

Because the Cartwrights believed they were mailing their monthly mortgage payment in time to have been received timely, they

2

decided in March 1998 to mail their mortgage payments to Capstead via certified mail, return receipt requested. They continued this practice until December 1998. As a result, they were able to compare the dates of receipt at Capstead's post office box with the dates upon which their account was actually credited with their payments. The following chart reflects uncontradicted information taken from the certified mail receipts and the Cartwrights' mortgage statements[1]:

| Payment Month | Date of Receipt at Capstead's P.O. Box | Payment Credited to Cartwrights' Account |
|---|---|---|
| March 1998 | March 16th | March 17th |
| May 1998 | May 16th | May 19th |
| August 1998 | August 14th | August 17th |
| November 1998 | November 16th | November 17th |

The Cartwrights paid the November 1997 late fee in March 1998, and paid the March, May and August 1998 late fees in November 1998. Capstead waived the Cartwrights' November 1998 late fee when it transferred the servicing of the loan to GMAC.

## Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be

---

[1] The Cartwrights' November 1997 mortgage payment was mailed via priority mail sometime around November 12th, and was posted to their account on November 20th.

3

granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a **genuine** issue of **material** fact, not merely some factual dispute. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249, 106 S.Ct. at 2511 (citing <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiffs' favor, to see if a jury could return a verdict for plaintiffs. If so, defendant's motion for summary judgment must be denied. If, however, as a matter of law, a jury could not return a verdict for plaintiffs, defendant's motion must be granted.

4

## Discussion

### Count 2 - Breach of Contract[2]

After reviewing the cases and arguments relied upon by the parties, the court concludes that if the Cartwrights had complained when they first learned of what Capstead was doing they might have had a legitimate gripe about when their payments were "received", assuming that Capstead's post office box was the place of receipt so that the imposition of late fees violated the contract.

But central to the Cartwrights' breach of contract claim is the applicability of the voluntary payment doctrine. Capstead points out that the Cartwrights' breach of contract claim is barred by this doctrine. Alabama courts have long recognized the defense of voluntary payment:

> It has been the law in Alabama for over 150 years that where one party, with full knowledge of all the facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie to recover such voluntary payment, in the absence of fraud, duress or extortion.

Mt. Airy Insurance Co. v. Doe Law Firm, 668 So. 2d 534, 537 (Ala. 1995).

"It is well settled that money voluntarily paid under a mistake of

---

[2] The request for class certification has been stayed until the ruling on the summary judgment motion.

fact may be recovered even where the party paying had means of ascertaining the real facts.  However, it is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered." Stone v. Mellon Mortgage Co., 2000 Ala. LEXIS 181 at *17-18 (Ala. May 5, 2000) (internal citations omitted).

The Cartwrights argue that the voluntary payment doctrine is not applicable in this case because the late fee payments were not made voluntarily but by a mistake of fact, and/or procured by fraud and/or made under duress.  Evidence of mistake of fact, fraud or duress admittedly can limit the application of the voluntary payment doctrine.  The Cartwrights assert that they did not intend to make a "gift" of the late fee payment, but were "duped into [paying] it by Capstead's misrepresentation." Pl.'s Brief at 13.

Capstead, on the other hand, argues that the Cartwrights voluntarily made the payments with full knowledge of the facts. Capstead argues that as to all five late fees, the Cartwrights "knew the mortgage due date . . . knew that if payment was not received by the due date, a late fee would be assessed . . . knew the date payments were allegedly received . . knew the date Capstead posted payments, but they never complained." Def.'s Brief at 17.  If the degree of the sophistication of the borrower is

6

Case 2:99-cv-01227-WMA   Document 70   Filed 09/27/00   Page 7 of 16

relevant, the borrowers here were neither naive nor particularly vulnerable to intimidation.

This court follows the "well-recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal; the theory of law being that, if a party would resist an unjust demand, he must do so at the threshold, and such resistance should precede payment." Sanchez v. Time Warner, 1998 U.S. Dist LEXIS 22011 at *4-5 (M.D. Fla Nov. 4, 1998) citing McMullen v. Inland Realty Corp., 113 Fla. 476, 152 So. 740 (Fla. 1933) (Brown, J. concurring in the dissent); Bell v. Barnes, 238 Ala. 248, 250, 190 So. 273, 274 (1939) (explaining that, "a debtor who pays more than he owes may recover the excess, if such payment was made by mistake of fact or was procured by fraud."). After reviewing the record, it becomes apparent to this court that the Cartwrights were not under any mistaken belief that Capstead was wrongfully charging them late fees. Mr. Cartwright, a lawyer, knew what Capstead was doing, and he knew what he was doing. In other words, there was no mistake of fact on the part of the Cartwrights. Ms. Cartwright testified that, "we had been assessed a late charge which from my certified receipt I knew was incorrect, and so I

7

decided to subtract it out and pay just the payment without the late charge since it was non-justified." S. Cartwright Tr. at 54-55.

The undisputed facts do not give rise to any exception to the voluntary payment doctrine.

### Count III - Fraud

The Cartwrights allege that Capstead issued false and misleading statements that late fees were due and owing, even though Capstead knew that the Cartwrights' payments were received in a timely manner. The Cartwrights assert that they relied on these false statements in paying the late fees even though the late fees "were not justified." Pl.'s Compl. at ¶ 33. The Cartwrights' fraud claim must be dismissed for two reasons. First, the Cartwrights do not provide colorable proof of reasonable reliance, which is an element of a fraud claim. Second, the Cartwrights' fraud claim is based solely on Capstead's alleged breach of the mortgage contract, and in Alabama a mere breach of a contract is insufficient to support such a claim.

Fraud in Alabama is defined as "misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party." Ala.

8

Code § 6-5-101 (1975). Regardless of whether the representations were made wilfully, recklessly or mistakenly, Alabama courts have held that there must be (1) a false representation, (2) the false representation must concern a material existing fact, (3) the plaintiff must rely upon that false representation, and (4) the plaintiff must be damaged as a proximate result. International Resorts, Inc. v. Lambert, 350 So. 2d 391, 394 (Ala. 1977). As a general rule, an intent to deceive is an indispensable element to the successful maintenance of a tort action for fraud and deceit. 37 Am. Jur. 2d, Fraud and Deceit § 188 (1968). Under Alabama law, failure to fulfill promises does not give rise to actionable fraud unless it is alleged and proved that the representations were made with intent to deceive and with no intent at the time the representations were made to carry them out. Evans v. Adam's Rib, Inc., 289 Ala. 377, 267 So. 2d 448, 450 (Ala. 1972). This is not such a case. There is no evidence that Capstead intentionally deceived the Cartwrights into paying late fees. Capstead's conduct, through its agents or otherwise, does not indicate a total disregard for its obligations under the contract. Moreover, "a mere breach of a contractual provision is not sufficient to support a charge of fraud." Brown-Marx Associates, Ltd. v. Emigrant Savings Bank, 703 F.2d 1361, 1370-71 (11th Cir. 1983) (citing

9

McAdory v. Jones, 260 Ala. 547, 71 So. 2d 526, 528 (Ala. 1954). To satisfy their fraud claim the Cartwrights would need to allege and prove that at the time the mortgage contract was signed, Capstead had no intention of complying with its obligation not to assess a late fee on a payment "received" timely in its post office box, and that it entered into the contract at that time with the intention of defrauding the Cartwrights. The Cartwrights do not satisfy this standard. While it appears that Capstead did not always post the Cartwrights' mortgage payments on the same day they arrived at its post office box,[3] this failure does not rise to a level of intentional deceit. The Cartwrights simply have failed to offer proof of the essential elements of their fraud claim.

### The Cartwrights' Duress Claim

The Cartwrights next allege that they paid the late fees only because they did not want to risk the placing of adverse information on their credit report, and therefore that the late fees were paid under duress because, "Capstead had the actual power to report adverse credit information," and that "the note and mortgage ultimately *could be called* because of failure to pay these

---

[3] Capstead has not yet questioned fully the accuracy of the dates stamped on the certified mail receipts, but if the matter went to trial, it might do so.

10

late charges." Pl.'s Brief at 20 (emphasis added).

The Restatement (Second) of Contracts §§ 174-177 (1981), recognizes two types of duress. First, a person experiences duress when he or she is physically compelled to manifest assent to a contract, despite all his or her intentions to the contrary. This type of duress prevents the contract from ever forming, because the element of assent is lacking. The second kind of duress occurs where a person is induced through improper threats to assent to a contract. In these cases, a contract is formed, but it is voidable.

The type of duress to which the Cartwrights contend they were subjected, and under which they performed under the contract with Capstead, is the latter, since they contend that the possibility of Capstead reporting their late payments to a credit agency (i.e. improper threats), rather than physical force, compelled them to pay the late fees.

Under Alabama law in order to prove that they were under economic duress, the Cartwrights must demonstrate three elements: "(1) wrongful acts or threats;  (2) financial distress caused by the wrongful acts or threats;  [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." International Paper v. Whilden, 469 So. 2d 560, 562 (Ala. 1985).

11

In addition, Alabama law recognizes that the mere threat of legal proceedings is insufficient to constitute the duress needed to make the payment of money involuntary. <u>Southern Railway Co. v. City of Florence</u>, 141 Ala. 493, 37 So. 844 (1904). And here, there was not even an overt threat of any kind by Capstead.

The Cartwrights have not presented evidence to support a claim of economic duress. As is customary under most credit agreements, the failure to make payments on a timely basis can result in a negative report to a credit rating agency. The Cartwrights were well aware of this fact. Any problems with potential adverse credit information if the Cartwrights should refuse to make late fee payments either could be resolved at a later date, or the Cartwrights could have called Capstead's hand much sooner. Based on the lack of evidence of wrongful threats of foreclosure or other acts by Capstead, a factfinder could not reasonably conclude that the Cartwrights made the late fee payments under economic duress. The Cartwrights' allegation that their late fee payments were made to avoid damage to their credit rating is circumspect in view of the absence of prior threats or actions by Capstead to cause such a result. "While an allegation of desperation to save one's financial reputation can be sufficient to sustain a claim for economic duress, the threat must be actual." <u>Smith v. Prime Cable</u>,

276 Ill. App. 3d 843, 853 & n.7; 658 N.E.2d 1325, 1334 & n.7 (1995) (internal citations omitted). Since there were no actual threats by Capstead, duress, in this instance, is inapplicable as a matter of law. It is more likely that the Cartwrights were hoping for a threat from Capstead than that they felt threatened.

### Count IV: Negligence/Wantonness Claim

The Cartwrights allege that Capstead negligently or wantonly breached its duty under the contract when it failed to properly credit mortgage payments on the date "received". The Cartwrights allege that they suffered damages as a result of Capstead's conduct. While it appears that Capstead did not credit the Cartwrights' account on the date of receipt of payment, an action based on negligence and/or wantonness cannot proceed.

The Cartwrights' negligence/wantonness claim is based on Capstead's alleged breach of the contractual duty that Capstead owed the Cartwrights' under the note. Under the contract, the Cartwrights were obligated to make monthly payments, and Capstead was required to credit the Cartwrights account upon receipt of such payment. "Contracts have a leading, primary obligation--to do a specified act; to perform a specified service; or to pay or deliver a specified thing of value." Bentley-Beale, Inc. v. Wesson Oil, 165 So. 830, 832 (Ala. 1936). Yet, "a mere failure to perform such a

contract-obligation is not a tort, and it furnishes no foundation for an action on the case." Id.

The Cartwrights are correct when they say that it is possible for a tort to arise in Alabama out of a breach of a duty implied by or arising out of a contract. See e.g., Bentley-Beale v. Wesson Oil, 231 Ala. 562, 165 So. 830, 832 (Ala. 1936) (stating that the tort of medical malpractice arises out of a contract for professional services); Sherrill v. Alabama Appliance Co., 197 So. 1, 4 (Ala. 1940) (noting that a breach of an implied duty to use reasonable skill and diligence in carrying out a contract can impose liability for an action in tort or assumpsit). Notwithstanding, the Alabama Supreme Court has said that an ordinary breach of contract will not give rise to a tort. Brown-Marx Assoc., 703 F.2d at 1371 (finding that tort for breach of duty of good faith did not arise out of a contractual obligation). Here, as in Brown-Marx, there is no wrong independent of the mortgage contract. As such, the Cartwrights have failed to present an actionable claim for negligence/wantonness.

### Count V - Injunctive Relief

The Cartwrights contend that the further collection of late fees that are due and owing is illegal, and that money damages is an inadequate remedy because it does not necessarily stop the

14

alleged on-going injury. The Cartwrights, therefore, demand an injunction against the further imposition of late fees if the payment is "received" timely at the post office box. Capstead argues that any claim for injunctive relief is moot since Capstead is no longer in the business of servicing mortgage loans.

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Powell v. McCormack</u>, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951 (1969). In general, a case does not become moot by a party's cessation of allegedly illegal conduct. <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 632, 73 S.Ct. 894, 897 (1953); <u>Atlantic States Legal Foundation v. Tyson Foods</u>, 897 F.2d 1128, 1135 (11th Cir. 1990). The Supreme Court has carved out an exception to this principle in instances where injunctive relief is sought. <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 99 S.Ct. 1379 (1979). A claim for injunctive relief may become moot if: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." 440 U.S. at 631, 99 S.Ct. at 1383 (internal quotations and citations omitted).

With Capstead's exit from the mortgage servicing business, the

15

Cartwrights' claim of the likelihood of future harm disappears. The Cartwrights' argument that Capstead could re-enter the mortgage servicing business and continue its "alleged illegal practice of collecting unjustified late fees" is even less persuasive. Summary judgment is due to be granted to Capstead on the Cartwrights' claim for injunctive relief.

## CONCLUSION

A separate and appropriate order will be entered.

DONE this 27 day of September, 2000

William M. Acker, Jr.
United States District Judge